**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF VERMONT**

In re:
    Tyconia Westover,
          Debtor.

Filed & Entered
On Docket
December 07, 2007

Chapter 13 Case
# 06-10611

Appearances:    Kathleen Walls, Esq.                       David Edwards, Esq.
                      Middlebury, VT                                 Burlington, VT
                      Attorney for Debtor                            Attorney for Creditor

## MEMORANDUM OF DECISION
### RULING ON CREDITOR'S APPLICATION FOR AN AWARD OF ATTORNEY'S FEES AND REQUEST FOR ESTABLISHMENT OF A NEW PRESUMED REASONABLE FEE IN LIFT STAY MOTIONS

        Before the Court is an Application for Compensation (doc. # 23) (the "Application") filed on May 17, 2007 by Wells Fargo Bank, N.A., as Trustee for Option One Mortgage Loan Trust 2004-2 Asset-Backed Certificates Series 2004-2 ("Creditor"). The Application seeks an Order directing that the Debtor pay the attorney's fees the Creditor incurred for legal services provided by David Edwards, Esq. (the "Applicant") in connection with the Creditor's motion for relief from stay (doc. # 20) (the "Motion"), filed on March 12, 2007. Although the Application states that the Applicant provided services totaling approximately $1,177.50 for legal fees and $167 for costs (doc. # 23, ¶ 9), the Creditor has reduced its request for legal fees and expenses due the Applicant to a total sum of $800 (doc. # 24, p. 1). The Creditor also seeks an award of an additional $300 to reimburse it for legal fees charged by separate counsel (Moss Codilis) for an initial plan review and the preparation and filing of a proof of claim in this case (doc. # 23, ¶ 12). In addition, the Creditor requests that the Court establish a presumptively reasonable legal fee to be allowed for relief from stay motions, and cites the $1,000 fee that HUD allows for relief from stay motions in Vermont chapter 13 cases as a relevant guide. (Id. at ¶ 10.) The Debtor has objected to the Application on numerous grounds and has asked the Court to require the Creditor to pay the legal fees she incurred to respond to the Motion; to attend the hearing; to review the Creditor's mortgage statement; and to draft a memorandum of law in opposition to the Application (doc. # 24). The Creditor filed a reply to the Debtor's objection (doc. # 25), reiterating its request that the Court grant an award of all the legal fees it seeks.

        The Court held hearings on the Motion on April 5, 2007 and May 10, 2007, and held continued hearings on the Motion, combined with hearings on the Application, on June 5, 2007 and June 21, 2007. Although the Court reserved decision on the Application, in an Order filed July 11, 2007, the Court directed the Debtor to make monthly payments to the Creditor commencing July 2007; to amend her chapter 13 plan to

cure post-petition mortgage arrearage accrued through June 2007; to pay the Creditor's legal fees and costs on the Motion as ultimately allowed by the Court; and to file an amended plan within ten days of the Court's decision on legal fees (doc. # 27). The Court also ordered the Creditor to issue monthly statements to the Debtor in compliance with the Local Rules. (Id.) The Court now issues its ruling on the Application.

## JURISDICTION

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157(b)(2)(G) and 1334.

## FACTUAL BACKGROUND

Based on the above-referenced documents, the Court finds the following facts:

1. The Debtor and her non-debtor spouse own certain improved real property located at 3125 Oregon Road, East Concord, VT (the "Property"). On October 30, 2003, the Debtor and her spouse executed a promissory note (the "Note") in favor of Option One Mortgage Corporation ("Option One'), in the original principal amount of $50,000, and granted a mortgage deed (the "Mortgage") in the same amount to Option One. The Mortgage was recorded and subsequently assigned to the Creditor (doc. # 20, ¶¶ 2 – 5).

2. The Debtor filed a chapter 13 petition on December 27, 2006, one week after judgment of foreclosure was issued by the Essex Superior Court in connection with the Debtor's default under the Mortgage (doc. # 23, ¶ 2).

3. As of March 1, 2007, the loan balance was $57,615.77 and the Property's value was $95,000 (doc. # 20, ¶¶ 7, 9).

4. Subsequent to filing her plan, the Debtor failed to make the January 2007 mortgage payment but, prior to confirmation, she amended her plan to include that payment. When she failed to make her February and March 2007 payments, the Creditor filed the relief from stay motion. As of March 12, 2007, when the Creditor filed the Motion, the Debtor owed a post-petition arrearage of approximately $2,195.94, "including principal, accrued interest, late charges and attorney's fees for the present Motion" (doc. # 20, ¶ 7). On April 9, 2007, after the first hearing on the Motion, the Debtor delivered to the Creditor's attorney a $900 cashier's check, representing the February payment (of $635.57/month) and part of the March payment, making the arrearage as of that date $1,773.08 (doc. # 23, ¶¶ 7, 8; doc. # 24, ex. 1).

5. Various provisions in the Mortgage provide for reimbursement of legal fees: Paragraph 7 states that: "[i]f Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy. . .), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, [and] paying reasonable attorneys' fees. . ." (doc. # 20, Ex. A, ¶ 7). Paragraph 26 of the Mortgage provides that, to the extent permitted by applicable law, "Borrower shall reimburse Trustee and Lender for any and all costs, fees and expenses which either may incur, expend or sustain in the execution of the trust created hereunder <u>or</u> in the performance of any act required or permitted hereunder or by law or in

2

equity or otherwise arising out of or in connection with this Security Instrument [or] the Note. . ." Id. ¶ 26 (emphasis added).

6. The Creditor's February 1, 2007 Statement of Account indicates "no account activity" and, in the outstanding fees and costs section, shows $31.20 owing for late fees (Ex. to doc. # 25). The Creditor's May 2, 2007 Statement of Account shows receipt of a $900 payment and how those funds were allocated to principal, interest, escrow, and suspense. The outstanding fees and costs section of this document shows $124.80 in late fees, $37.05 for property inspections, and $300.00 for "additional due post petition." An asterisk indicates the late fees and property inspection fees came due after the bankruptcy filing. (Ex. to doc. # 24).

7. The Creditor's itemization of fees shows expenditure of $1,177.50 in legal fees and $167.00 in costs for the filing fee and an overnight UPS delivery (doc. # 23, Ex. 3). In its Application, the Creditor states that the legal fees represent "approximately 6 hours" billed at $150.00 per hour (doc. # 23, ¶ 9) (which by the Court's calculation would amount to $900). The Creditor has reduced its request to $800 in fees and costs for services provided by the Applicant.

## DISCUSSION

**I.    The Application for Attorney's Fees in Connection with the Lift Stay Motion**

Sections 506(b) and 330 of the Bankruptcy Code, respectively, set forth a creditor's right to recover legal fees, and the criteria for determining an allowance of attorney's fees. Section 330 provides that the compensation must be reasonable. See 11 U.S.C. § 330(a)(3). The essential question before the Court is the reasonableness of the Applicant's fee request.

The Court turns first to the issue of whether there are any obstacles to awarding attorney's fees in this instance. Contrary to the Debtor's arguments that neither the Note nor the Mortgage entitle the Creditor to attorney's fees because they refer only to the allowance of reasonable fees in the event of acceleration or creation of a trust (doc. # 24, p. 2), the provisions quoted above in paragraph 5 allow for reasonable attorney's fees in the context of a bankruptcy case. The Court finds that the Debtor was in default at the time the Motion was brought and that the contract between the parties entitles the Creditor to collect reasonable attorney's fees under these circumstances.

Because the "applicant bears the burden of proving the reasonableness of compensation from a bankruptcy estate," Stanzione v. Bank of America (In re Stanzione), No. 07-1011, 2007 WL 2792844, *8 (Bankr. D. Vt. Sept. 24, 2007), the next consideration is whether the Creditor has met that burden.

For approximately the last seven years, it has been the practice of this Court to treat $350 as the presumed reasonable attorney's fee that a creditor may collect from a debtor for filing and prosecuting a motion for relief from stay in a consumer case. The premise underlying this presumed reasonable fee in consumer cases is that, generally speaking, home mortgage or automobile relief from stay motions are uncomplicated and do not require more than about three hours of legal work. This computation contemplates approximately one hour for the gathering of facts, figures, and data that will be the basis of the proof of claim,

3

attachments, and allegations of the motion; approximately one hour to draft, file, and serve the motion; and approximately one hour for the pre- and post-filing communication with the debtor's attorney.[1] The presumed reasonable fee is not binding and is subject to rebuttal, particularly in those instances where the factual, evidentiary, and/or legal issues are complicated, or the debtor raises defenses that the creditor could not have reasonably anticipated or discovered through due diligence in advance of the filing of the motion. If the debtor objects to relief from stay, thereby requiring the creditor's attorney to respond to the objection and appear in Court to obtain an adjudication of the motion, the Court considers $500 to be a reasonable fee. Accordingly, the Court will use $500 as a baseline figure in this case where the Debtor has objected to the relief from stay motion and the Applicant appeared at several court hearings.[2]

The Application includes a fee itemization that shows a total of $1,177.50 in legal fees billed for services rendered from March 2 through May 10, 2007, and expenses of $150.00 for the filing fee and $17.00 for an overnight mail charge (to mail the Debtor's April 9, 2007 check to the Creditor). The $1,177.50 figure represents 7.35 hours of work (including 1.90 hours to draft the lift stay motion) and an additional .75 hours ($112.50) to draft the fee application. The Court finds that both the $1,065.00[3] in itemized legal fees and the reduced figure of $800 for the lift stay motion are excessive and unreasonable in this "garden variety" home mortgage default case that has no unique or complicated factual, evidentiary, or legal questions, and denies reimbursement in these amounts to the Creditor. See In re Crowley, 293 B.R. 628, 635 (Bankr. D. Vt. 2003) (basing its fee determination on how much time is reasonable for a "typical" sophisticated commercial counsel in Vermont to draft a "typical" lift stay motion in a confirmed chapter 13 case).

The Court also denies the Creditor's request that the Debtor be required to pay the $300 fee the Creditor was charged by separate counsel, Moss Codilis, for the initial plan review and preparation and filing of the proof of claim. The Applicant has provided no documentation or itemized billing records to support this fee. See Stanzione, 2007 WL 2792844 at *8 (ruling that due to the absence of a detailed itemization in support of the fees requested, the Court could not assess the reasonableness of the request and would make no award); In re Fibermark, Inc., 349 B.R. 385, 395 (Bankr. D. Vt. 2006) (same). Moreover, the tasks allegedly performed by Moss Codilis are properly included in the preparation for the relief from stay motion, and are subsumed in a single award of fees. (The Creditor may allocate the award of attorney's fees however it deems appropriate; the Debtor will not be charged twice for the legal work underlying a single lift stay motion.)

---

[1] This computation further contemplates that some aspects of the preparation and service of the motion are most properly performed by, and billed at an hourly rate allocable to, a paraprofessional, whereas the work associated with the court appearance will be done exclusively by an attorney and billed at an attorney's hourly rate.

[2] The attorney, who charges $150 per hour, included a $75 charge to attend the April 5, 2007 hearing and $75 to attend the May 10, 2007 hearing. Attending two hearings would add $150 to the $350 presumably reasonable baseline, totaling $500, which comports with the Court's presumption that $500 is a reasonable fee for disputed lift stay motions.

4

**II.       The Fee Sought for Preparation of the Fee Application**

The Court must now consider whether to award $112.50 in legal fees that the Applicant seeks for the preparation of the fee application. This amount is distinct from the fees incurred in the relief from stay motion because, generally speaking, a separate fee application is not included in a lift stay motion. The Court declines to award this amount primarily on equitable grounds.

The Creditor requested a legal fee well in excess of the range of presumed reasonable fees typically granted in this District for garden variety consumer home mortgage default relief from stay motions. Both the initial request for a legal fee of $1,365.00 ($1,065.00 for Attorney Edwards plus $300 for Moss Codilis), and the ultimate request for the reduced figure of $1,100 (the $800 fee for Attorney Edwards plus $300 for Moss Codilis), were unsupported by the facts and legal circumstances of this case and were unreasonable. The magnitude of the legal fees sought provoked an irreconcilable dispute between the parties, requiring two hearings on the issue. The onus here lies with the Creditor: it made a business judgment to seek an award of extraordinary legal fees. It should have been aware that, if it prevailed, it might be awarded the entire fee as well as the costs of preparing the fee application; on the other hand, it should also have been aware that it was taking a risk that the Court might deny a portion (or all) of the fees sought as well as the fees incurred in pursuing collection of those fees. If the Creditor had been able to justify its above-the-norm fee as reasonable, the Court would have granted the Creditor reimbursement of a reasonable legal fee for the preparation of its fee application. But, the Creditor did not establish a right to any sum in excess of the presumed reasonable fee. Since the Court finds the Creditor failed to meet its burden of demonstrating the fee sought was reasonable, the Court will not impose on the Debtor the obligation to reimburse the Creditor for the legal fees it incurred in connection with the Application.

Accordingly, based on the rather scant record before the Court, the Court will award the Creditor $500 in legal fees plus $167 in expenses (attributable to the filing fee for the motion and overnight delivery of the $900 payment).

**III.      Other Issues Raised**

The parties have made a number of other arguments that deserve attention, but which do not, in the final analysis, modify the Court's decision to award the Creditor $500 in legal fees and $167 in expenses. For example, Debtor's counsel complains that the Creditor brought its motion too soon: as of the March 12, 2007 date of the lift stay motion, the Debtor was delinquent by only one $635.57 payment because even though she had filed her case on December 27, 2006, her January 2007 payment had been rolled into her plan and the

---

[3] This figure is arrived at by subtracting the $112.50 fee for the Application from the $1,177.50 total fees requested.

5

grace period for the unpaid March had not yet expired (doc. # 24, p. 1 & n.1). The Court is not persuaded by this argument. If a debtor goes into a payment default, as that term is defined by the controlling contract between the parties, the Creditor may bring a lift stay motion. However, Creditors' counsel must be cognizant of the risks of too zealously bringing relief from stay motions where there is an extremely short post-petition default period or a dearth of clear information about the existence or extent of the alleged post-petition default. See generally In re Cont'l Vending Mach. Corp., 543 F.2d 986, 994 (2d Cir. 1976) (instructing that where an agreement between secured creditor and debtor allows attorney's fees, the "rule of reason must be observed, in order to avoid such clauses becoming a tool for wasteful diversion of an estate at the hands of secured creditors who, knowing the estate must foot the bill, fail to exercise restraint in enforcement expenses."); In re Wonder Corp. of Am., 72 B.R. 580, 591 (Bankr. D. Conn. 1987) ("[W]here services are not reasonably necessary or where action taken is because of an attorney's excessive caution or overzealous advocacy, courts have the right and duty, in the exercise of their discretion, to disallow fees and costs under § 506(b)").

The parties have also disputed the adequacy and clarity of the Creditor's monthly account statements to the Debtor, vis a vis Standing Order #07-07, and have relied upon the sufficiency of those statements as a factor to be considered in connection with the Creditor's right to attorney's fees. Creditor's counsel asserts that he sent Debtor's counsel an e-mail on March 2, 2007 (ten days prior to filing the lift stay motion) stating:

> Option One sent me a referral for relief from stay on Tyconia Westover. They have not received any payments since she filed. I have noted that you amended the plan to include January 2007, so your client needs to pay February 2007. Please let me know when she will be making the payment so that I can close this out without adding fees or costs.

(doc. 25, ¶ 2). According to the Creditor, the Debtor did not arrange to pay the arrears and thus avoid the legal fees. Rather, Debtor's counsel responded (at an unspecified time)[4] that "Ms. Westover tells me she has not yet received a statement. Please have a statement sen[t] which complies with the standing order by the end of the month for the April payment" (doc. # 25, ¶ 3). This answer by the Debtor to the Creditor's e-mail is substantively non-responsive, as it ignores the default and seeks to substitute for the arrears cure question the issue of whether an account statement was sent. Moreover, the Creditor provided a copy of the February statement that it had sent the Debtor, which contradicts the Debtor's statement to her attorney.

Standing Order # 07-07, which went into effect on April 9, 2007 and was therefore effective on the date of the May statement, requires creditors to provide certain specific information regarding the status of a debtor's mortgage on monthly, post-petition statements, including "the post-petition amount past due, if any,

---

[4] The Creditor asserts that the e-mail from Debtor's counsel "was the only communication received from [debtor's] counsel prior to the motion being filed" (doc. # 25, ¶ 3). The Creditor's time line seems confused, since the standing order that Debtor's counsel referred to in its e-mail went into effect on April 7, 2007.

6

and from what date." Standing Order # 07-07, II(B)(4). In the "Outstanding Fees/Costs" category on the Creditor's May 2 statement, there is a line for "Additional Due <u>Post Petition</u> - $300" (emphasis added). The statement does not indicate from what date that figure was due, as required by the Standing Order, nor does it indicate what the $300 charge was for – information which would have been very helpful although not required by the Standing Order. The Debtor argues that because the statement did not "provide the amount due post-petition," the Creditor was not entitled to fees and costs associated with the Motion and that the Debtor was entitled to an award of legal fees from the Creditor in connection with the defense of the Motion (doc. # 24, p. 2). However, the May statement clearly stated the $300 amount was due post-petition. Other than the one omission regarding the date from which the amount was due, and the confusing entry on the May 2007 statement indicating the next payment was due in February 2007, the Creditor's statement complied with the Local Rule that had been instituted only three weeks previously. The Court thus rejects Debtor's argument that the deficiency in the Creditor's monthly post-petition account statements warrants a denial of attorney's fees to the Creditor and warrants an award of attorney's fees to the Debtor.

In the Court's estimation, it would not have been necessary to hold four hearings to resolve this Motion and Application if counsel had communicated with each other more effectively, the Creditor had not provided confusing statements or sought excessive fees, and the Debtor had responded to the Creditor's e-mail before the motion was filed in a manner that squarely addressed the default in payment.

**IV.     Creditor's Request for the Establishment of a Higher Presumed Reasonable Fee for Relief from Stay Motions [in Consumer Cases] in this District**

The Application also requests that this Court modify its current practice, and increase the presumed reasonable attorney's fee for motions for relief from stay from the $350/$500 figures currently in effect. Counsel has attached to the Application a copy of the HUD fee schedule showing a state by state itemization of "standard attorney's fees" for such services as nonjudicial foreclosure, judicial foreclosure, bankruptcy clearance (apparently the HUD term for a relief from stay motion), promissory action, and deed-in-lieu (doc. # 23, Ex. 4). The Applicant argues that since "HUD fees are set at $1000.00 for Relief from Stay Motions in [the] District of Vermont Chapter 13 cases," the Court should adopt the $1,000 figure as reasonable figure for lift stay motions (doc. # 23 ¶ 10).

Having researched the presumed reasonable fees for lift stay motions in other bankruptcy courts, the Court concludes that the $350/$500 figures currently in effect in this District are still reasonable. Although this Court would consider establishing a higher presumed reasonable fee for lift stay motions that require hearings, the HUD schedule by itself does not provide a sufficient basis to do so.[5] For example, the HUD

---

[5] What would be helpful in computing a reasonable fee in a disputed relief from stay motion would be an itemization of tasks and charges involved in the motion. Even more helpful would be a compilation of such charges garnered from a number of disputed

7

schedule states, "this fee assumes that all required procedural steps have been completed" (doc. # 23, Ex. 4). Additionally, the form specifies that the fees "allowed" – $650 in a chapter 7 case, and $1,000 in chapter 11, 12 and 13 cases – are the "maximum allowable fee[s]." It is this Court's intention to have a presumed reasonable fee for creditors that is the "typical" fee – not the maximum fee – that would be allowed, i.e., the fee a creditor could reasonably expect to recover for what this Court characterizes as a "garden variety" motion. The HUD designation of what might be a reasonable maximum fee is not particularly pertinent to that analysis.

This Court will continue to adjudicate applications that seek fees in excess of the presumed reasonable amount – motions that are not the garden variety type, are disputed, or trigger the filing of unanticipated defenses – by directing the creditor to file an application for fees and assessing the creditor's right to such fees by reference to the criteria set out in the statute and case law. See Fibermark, 349 B.R. at 393-95. For these reasons, the Court declines to adopt the HUD figure as the presumed reasonable fee for disputed relief from stay motions at this time. In the consumer case context, and dealing with straightforward consumer home mortgage or automobile payment default lift stay motions, it will continue to use $350 as the presumed reasonable fee for motions that do not require a hearing and $500 for motions that do require a hearing.

## CONCLUSION

For the reasons set forth above, the Creditor's application for attorney's fees is granted, in part. The Court allows attorney's fees to the Creditor in connection with its motion for relief from stay, and directs the Debtor to pay $500 for fees and $167 for expenses. The Court denies the balance of the Application.

The Court declines to grant the Applicant's request to modify the Court's current practice and establish a new presumed reasonable fee for creditors who file relief from stay motions in consumer cases in this District.

December 7, 2007  
Rutland, Vermont

Colleen A. Brown  
United States Bankruptcy Judge

---

relief from stay motions, which would allow the Court to better review the time and effort involved when assessing the presumed reasonable fee.

8